## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK
## ROCHESTER DIVISION

| | |
|---|---|
| LARRY PRATT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 6:15-cv-6765-FPG |
| ) | The Honorable Frank P. Geraci, Jr. |
| LORETTA LYNCH, Attorney General of ) | |
| the United States, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    A.    **Statutory and regulatory background** ................................................ 2

    B.    **Plaintiffs' First Amended Complaint** ................................................ 5

ARGUMENT ................................................................................................. 7

    A.    **Plaintiffs' claims should be dismissed for lack of standing** .............. 7

        1.    Legal standard for motions to dismiss pursuant to Rule
            12(b)(1) ........................................................................................ 8

        2.    The individual Plaintiffs have not alleged a concrete,
            particularized injury necessary to establish standing ................. 9

        3.    The organizational Plaintiffs lack standing because they
            have not shown that any of their members possess standing .......... 12

    B.    **In the alternative, Plaintiffs' claims should be dismissed
        pursuant to Rule 12(b)(6) for failure to state a claim** ..................... 12

        1.    Legal standard for motions to dismiss pursuant to Rule
            12(b)(6) ........................................................................................ 13

        2.    Plaintiffs have not asserted a cause of action under the
            Second Amendment because they have not identified any
            burden placed on their ability to possess a firearm ................. 14

        3.    Plaintiffs have failed to identify a protected property or
            liberty interest necessary to sustain their due process claim ............ 15

        4.    Plaintiffs' Fourth Amendment claim should be dismissed
            for failure to identify a search or seizure by the Defendants ......... 18

        5.    Plaintiffs' equal protection claim fails because they have
            not plead facts demonstrating that Defendants acted in a
            discriminatory manner and because they have not shown
            they were treated differently than similarly situated
            individuals .................................................................................... 20

        6.    Plaintiffs have failed to plead any violation of their right to
            privacy because they do not have a protected privacy

interest in information submitted as part of the NICS
background check process ...................................................................... 22

7.      Plaintiffs have not stated a claim under the APA because
they have not challenged a final, discrete agency action .......................... 23

**CONCLUSION** ..................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Arar v. Ashcroft*,
  532 F.3d 157 (2d Cir. 2008)................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................. 13, 18, 20, 21

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004)................................................................ 12

*Bd. of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972)........................................................................... 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................... 13

*Caldarola v. Cty. Of Westchester*,
  343 F.3d 570 (2d Cir. 2003)................................................................ 20

*Cassano v. Carb*,
  436 F.3d 74 (2d Cir. 2006)................................................................. 23

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013)................................................................... 9, 10

*Cty. of Sacramento v. Lewis*,
  523 U.S. 833 (1998)........................................................................... 16

*Davis v. Rodriguez*,
  364 F.3d 424 (2d Cir. 2004)................................................................ 18

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)................................................................. 8

*District of Columbia v. Heller*,
  554 U.S. 570 (2009)...................................................................... 14, 15

*Doe v. City of New York*,
  15 F.3d 264 (2d Cir. 1994)................................................................ 23

*Fresh Start Substance Servs., LLC v. Galvin*,
  599 F. Supp. 2d 279 (D. Conn. 2009).................................................... 22

*Goldstein v. Pataki*,
    516 F.3d 50 (2d Cir. 2008)........................................................................................ 13

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)...................................................................................... 13

*Huddleston v. United States*,
    415 U.S. 814 (1974).................................................................................................... 2

*Johnson ex rel. Johnson v. Columbia Univ.*,
    No. 99 CIV. 3415 (GBD), 2003 WL 22743675 (S.D.N.Y. Nov. 19, 2003) ............... 22

*Kalchalsky v. Cty. of Westchester*,
    701 F.3d 81 (2d Cir. 2012).................................................................................. 14, 15

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).................................................................................................... 9

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990).................................................................................................. 24

*Mantena v. Johnson*,
    809 F.3d 721 (2d Cir. 2015)........................................................................................ 8

*Mathews v. Eldridge*,
    424 U.S. 319 (1976).............................................................................................. 16, 17

*McMenemy v. City of Rochester*,
    241 F.3d 279 (2d Cir. 2001)................................................................................. 16, 17

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)............................................................................................. 10, 11

*Morrissey v. Brewer*,
    408 U.S. 471 (1972).................................................................................................. 17

*Nat. Res. Def. Council v. Johnson*,
    461 F.3d 164 (2d Cir. 2006)........................................................................................ 8

*Nemours & Co. v. Invista B.V.*,
    473 F.3d 44 (2d Cir. 2006)......................................................................................... 7

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004)............................................................................................... 24, 25

*Omni Capital Int'l v. Rudolph Wolff & Co.,*
   484 U.S. 97 (1987) ........................................................................................... 7

*Paul v. Davis,*
   424 U.S. 693 (1976) ................................................................................... 17, 22

*Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,*
   896 F.2d 674 (2d Cir. 1990) ............................................................................ 9

*Rolon v. Henneman,*
   517 F.3d 140 (2d Cir. 2008) ...................................................................... 16, 17

*Ross v. Bank of Am. N.A. (USA),*
   524 F.3d 217 (2d Cir. 2008) ............................................................................ 9

*Shipping Fin. Servs. Corp. v. Drakos,*
   140 F.3d 129 (2d Cir. 1998) ............................................................................ 8

*Smith v. Maryland,*
   442 U.S. 735 (1979) ....................................................................................... 19

*Soucie v. Cty. of Monroe,*
   736 F. Supp. 33 (W.D.N.Y. 1990) ................................................................. 23

*Thorne v. Jones,*
   765 F.2d 1270 (5th Cir. 1985) ....................................................................... 18

*Turkmen v. Hasty,*
   789 F.3d 218 (2d Cir. 2015) ........................................................................... 21

*United Food & Commercial Workers Union v. CenterMark Props. Meriden Square,*
   30 F.3d 298 (2d Cir. 1994) .............................................................................. 9

*United States v. Jacobsen,*
   466 U.S. 109 (1984) ....................................................................................... 19

*United States v. Miller,*
   425 U.S. 435 (1976) ....................................................................................... 19

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State,*
   454 U.S. 464 (1982) ....................................................................................... 11

*Velez v. Levy,*
   401 F.3d 75 (2d Cir. 2005) ............................................................................. 16

v

*Warth v. Seldin,*
    422 U.S. 490 (1975) ..................................................................................... 8, 9

*Weinstein v. Albright,*
    261 F.3d 127 (2d Cir. 2001) ............................................................................. 20

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ......................................................................................... 11

*Zinermon v. Burch,*
    494 U.S. 113 (1990) ......................................................................................... 16

## Statutes

5 U.S.C. § 551(13) ............................................................................................... 24

5 U.S.C. § 552 ..................................................................................................... 25

5 U.S.C. §§ 701–706 ....................................................................................... 6, 24

5 U.S.C. § 704 ................................................................................................ 24, 25

18 U.S.C. §§ 921–931 ........................................................................................... 2

18 U.S.C. § 922(d)(1)–(9) ..................................................................................... 4

18 U.S.C. § 922(t) ................................................................................................. 4

18 U.S.C. § 922(t)(1) ............................................................................................. 2

18 U.S.C. § 922(t)(2) ............................................................................................. 2

18 U.S.C. § 922(t)(2)(C) ........................................................................................ 5

## United States Constitutional Amendments

U.S. Const. amend. II ........................................................................................... 14

U.S. Const. amend. IV .......................................................................................... 18

U.S. Const. amend. XIV ....................................................................................... 20

## Rules

Federal Rule of Civil Procedure 8(a)(2) .............................................................. 13

Federal Rule of Civil Procedure 12(b)(1) .................................................. 7, 8, 9, 12

Federal Rule of Civil Procedure 12(b)(6) .................................................................... *passim*

Federal Rule of Civil Procedure 12(h)(3) ........................................................................... 9

**Regulations**

27 C.F.R. § 478.124(c)(1) ............................................................................................... 3

27 C.F.R. § 478.129(b) ................................................................................................... 4

28 C.F.R. § 25.1 ......................................................................................................... 3, 4

28 C.F.R. § 25.3 ............................................................................................................. 3

28 C.F.R. § 25.6(c) ......................................................................................................... 4

28 C.F.R. § 25.6(c)(1)(iii) ............................................................................................... 3

28 C.F.R. § 25.7(a) ......................................................................................................... 3

28 C.F.R. § 25.9(a) ......................................................................................................... 4

28 C.F.R. § 25.9(b) ......................................................................................................... 5

28 C.F.R. § 25.10(a) ....................................................................................................... 5

28 C.F.R. § 28.10(c) ....................................................................................................... 5

**Other Authorities**

H.R. REP. NO. 103-344, 1993 U.S.C.C.A.N. 1984 ........................................................... 2

## INTRODUCTION

Pursuant to statutory mandate and authority granted to it by Congress, the Federal Bureau of Investigation ("FBI") oversees the background check process for purchasing firearms from federally licensed dealers.  This process serves the important purpose of ensuring that firearms do not fall into the hands of individuals who are disqualified from possessing them by operation of federal or state law.  Carefully proscribed statutory and regulatory provisions ensure that the government agencies involved in background checks obtain and retain only that information which is necessary to ensure that the process operates efficiently and accurately.

Plaintiffs, twenty-nine individuals and five organizations who are strong proponents of Second Amendment rights, challenge in this lawsuit certain aspects of that process, alleging that the FBI improperly cross-checks all potential firearms purchasers against databases used to track potential terrorists.  In addition, Plaintiffs claim that government officials improperly collect and disseminate personal information about prospective purchasers.

None of the claims brought by Plaintiffs can advance past the pleading stage, however.  As an initial matter, Plaintiffs lack standing to pursue their claims in this case because they have not identified any sort of concrete, particularized harm that they have suffered on account of Defendants' alleged conduct.  But even if Plaintiffs had standing, their claims should still be dismissed for failure to state a cause of action.  Plaintiffs rely almost exclusively on conclusory allegations and suspicions as the basis for their claims and have further failed to plead requisite elements of their causes of action.  Absent

anything further, Plaintiffs' claims cannot stand.  Accordingly, the Court should grant Defendants' Motion to Dismiss.

## BACKGROUND

### A.    Statutory and regulatory background

The Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921-931 ("the Act") imposes a comprehensive, federal regulatory scheme over the manufacture and distribution of firearms and ammunition.  Congress's "principal purpose" in enacting federal gun control legislation "was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency."  *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (citation and internal punctuation omitted).  The Gun Control Act imposes restrictions on the receipt, possession, shipment, and transfer of firearms and ammunition in or affecting interstate or foreign commerce.

In 1993, the Brady Act amended the Act to require background checks of persons attempting to purchase firearms, in order to prevent transfers to individuals whom the Gun Control Act or state law bars from possessing firearms. *See* H.R. Rep. No. 103-344 at 7, *reprinted in* 1993 U.S.C.C.A.N. 1984.  The Brady Act directed the Attorney General to establish and operate a nationwide background check system that licensed firearms dealers could contact, by phone or electronically, to be informed whether information in the system indicates that transfer of a firearm to a particular individual would be prohibited.  *See* 18 U.S.C. §§ 922(t)(1) & (t)(2).  Under the authority delegated in the Brady Act, the Attorney General established the National Instant Criminal Background

Check System ("NICS"), *see* 28 C.F.R. § 25.1 *et seq*., and assigned management of the NICS to the FBI, *see* 28 C.F.R. § 25.3.

As a general matter, the purchase of a firearm from a licensed dealer proceeds in two phases. In the first phase, a potential purchaser completes a Firearms Transaction Record ("Form 4473"), which asks for certain identifying information, such as the purchaser's name, sex, residence address, date and place of birth, height, weight, race, and country of citizenship. 27 C.F.R. § 478.124(c)(1). A purchaser must also complete a certification that he or she is not prohibited by the Act from receiving a firearm. *Id*. A purchaser has the option of providing additional identifying information, such as his or her Social Security number, to help facilitate the NICS background check. *Id*. § 478.124(c)(2). After the NICS background check is complete, the licensed dealer fills in additional information on the Form 4473, such as the type of identification (e.g., driver's license) provided by the purchaser and the make, model, and serial number of the firearm(s) to be transferred to the purchaser. *Id*. § 478.124(c)(3).

In the second phase of the process, the licensed dealer submits, either by phone or electronically, to the NICS via the FBI or a point-of-contact state agency the following information about the potential purchaser: name, sex, race, date of birth, and state of residence. *See* 28 C.F.R. § 25.7(a). A background check is then performed using this information, including checks against relevant databases maintained by the FBI, such as the NICS Index, the National Crime Information Center, and the Interstate Identification Index. *See* 28 C.F.R. §§ 25.6(c)(1)(iii), 25.6(f)(2). The purpose of the check is to determine whether the individual attempting to purchase a firearm falls into one of the categories of persons prohibited from receiving or possessing firearms under federal or

state law.[1]  *See* 28 C.F.R. § 25.1.  If the background check reveals information

demonstrating that either state or federal law prohibits the transfer, the transfer is denied;

however, if there is no information demonstrating that a person is prohibited, or if three

business days elapse, the transfer is allowed to proceed.  *See* 18 U.S.C. § 922(t); 28

C.F.R. § 25.6(c).

The retention of records generated in this process is tightly controlled by

regulation.  Licensed dealers are required to keep copies of each Form 4473 for at least

20 years following the date of sale.  27 C.F.R. § 478.129(b).  Where a NICS background

check is initiated but the sale or transfer of the firearm is not made, the licensed dealer

must retain the form for at least five years.  *Id.*  By statute, the government has access to

the Forms 4473 retained by licensed dealers only in three limited scenarios:  (1) during a

routine inspection of the licensed dealer, which occur no more than once per year, 18

U.S.C. § 923(g)(1)(B)(ii); (2) when a licensed dealer goes out of business and is not

replaced by a successor, *id.* § 923(g)(4); or (3) as part of a criminal investigation, *id.*

§ 923(g)(1).  With respect to the NICS background check, the NICS retains records

indicating that receipt of a firearm by a potential purchaser would violate federal or state

law.  28 C.F.R. § 25.9(a).  If a sale is allowed to proceed, all records pertaining to that

sale generated as part of the background check, except for a unique identifying number

---

[1] The ten categories are as follows:  (1) persons convicted of a crime punishable by imprisonment for a term of more than one year; (2) fugitives from justice; (3) unlawful users of or addicted to any controlled substance; (4) persons adjudicated as mentally defective or committed to a mental institution; (5) aliens illegally or unlawfully in the United States, or admitted to the United States pursuant to a non-immigrant visa; (6) persons discharged from the military under dishonorable conditions; (7) persons who have renounced their U.S. citizenship; (8) persons subject to certain types of restraining orders; (9) persons who have been convicted of a misdemeanor crime of violence; and (10) persons under indictment for a crime punishable by a term exceeding one year.  18 U.S.C. § 922(g)(1)-(9), (n).

assigned to the check and the date such a number was assigned, are destroyed within twenty-four hours.  18 U.S.C. § 922(t)(2)(C); 28 C.F.R. § 25.9(b)(1)(iii).

The FBI also maintains an automated NICS Audit Log of all incoming and outgoing transactions that pass through the NICS system.  28 C.F.R. § 25.9(b).  This log contains certain information supplied to the NICS about the firearm transaction, with only identifying information about denied transactions being retained on a long-term basis.  *See id*. § 25.9(b)(1) (requiring identifying information about an open-status transaction to be deleted within 90 days from the date of the inquiry and identifying information about allowed transactions to be deleted within 24 hours after the licensed dealer is cleared to transfer the firearm to the purchaser).  Information kept in the log is used largely for maintenance purposes, including to analyze system performance, assist users in resolving operational problems, and to support audits of the system.  *Id*. § 25.9(b)(2).  Information from the log may also be used to assist ATF with investigations and conducting inspections of licensed dealers.  *Id*. § 25.9(b)(2)(i)-(ii).

Individuals who were denied a firearms purchase following a NICS background check may apply to either the FBI or point-of-contact state agency to request the reasons for the denial.  28 C.F.R. § 25.10(a).  The denying agency must respond within five days. *Id*. § 25.10(b).  Individuals who were denied a firearms purchase may also challenge the accuracy of the record upon which the denial was based, or may demonstrate that their rights to possess a firearm have been restored.  *Id.* § 25.10(c).

**B.      Plaintiffs' First Amended Complaint**

Plaintiffs are twenty-nine individuals and five organizations who are self-described "outspoken critics against government infringement of Second Amendment

and additional liberties."  First Amended Complaint ("FAC"), ECF No. 3, ¶ 75.  All

Plaintiffs state that they have completed a Form 4473 since February 2004.[2]  *Id*. ¶ 81.

Plaintiffs' complaint centers on two main contentions.  First, they allege that, as

part of the NICS background check, the FBI conducts a "fully operational cross-check

system" with the Terrorist Screening Database.[3]  *Id*. ¶ 19.  Plaintiffs assert that the FBI

runs this cross check for every application sent to the NICS background check.  *Id*. ¶ 24.

According to Plaintiffs, any such cross-checking stigmatizes potential purchasers of

firearms "as terrorists and potential terrorists."  *Id*. ¶ 125.

Second, Plaintiffs contend that Defendants engage in practices whereby they

improperly access certain information from Forms 4473 and that Defendants "have been

compiling and retaining confidential customer information, including manufacture,

model, and serial number of potential firearms purchases."  *Id*. ¶¶ 25-28.  Plaintiffs

accuse Defendants of disclosing "confidential, personal information" obtained during

NICS background checks to other federal, state, and local law enforcement agencies, as

well as unnamed private entities.  *Id*. ¶¶ 29-31.

In their complaint, Plaintiffs bring six claims for relief, all arising under various

provisions of the U.S. Constitution or the Administrative Procedure Act, 5 U.S.C.

§§ 701-706.  FAC ¶¶ 111-38.  Plaintiffs name as defendants Loretta Lynch, the Attorney

General of the United States, James B. Comey, Director of the FBI, Christopher M.

---

[2] Presumably, Plaintiffs' allegation with respect to completion of a Form 4473 concerns only the twenty-nine individual Plaintiffs and not the organizational Plaintiffs.

[3] Plaintiffs explain that their use of the phrase "Terrorist Screening Database" includes the current database, also known as the Terrorist Watchlist, and all predecessor and feeder databases.  FAC ¶ 19 n.4.  For the Court's convenience, Defendants adopt Plaintiffs' use of this phrase for purposes of this motion.

Piehota, Director of the Terrorist Screening Center, and Thomas E. Brandon, Acting

Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), all in

both their official and personal capacities.[4]  Plaintiffs seek declaratory and injunctive

relief, as well as monetary damages, including punitive damages.  *Id*. Prayer for Relief I-

VII.

## ARGUMENT

Plaintiffs' complaint suffers from two central defects.  First, Plaintiffs have not

stated that they have suffered any type of actual, concrete harm as a result of Defendants'

alleged conduct.  Plaintiffs thus cannot establish standing, and their complaint should be

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  Second, even if the

Court were to conclude that Plaintiffs have standing in this case, their complaint must

still be dismissed for Plaintiffs' failure to state a claim.  All six of Plaintiffs' causes of

action fail to plead essential elements of the claim and consist of conclusory assertions

without the necessary supporting factual allegations.  Dismissal pursuant to Federal Rule

of Civil Procedure 12(b)(6) is accordingly also warranted.

**A.      Plaintiffs' claims should be dismissed for lack of standing**

"The federal judicial power extends only to actual cases and controversies";

absent a live issue, "federal courts are without jurisdiction to decide abstract or

hypothetical questions [of] law."  *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d

44, 46 (2d Cir. 2006).  Standing is thus "the threshold question in every federal case,

---

[4] Defendants have not been served in their personal capacities and therefore the personal-capacity claims against them are not properly before the Court at this time. *See Omni Capital Int'l v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").  As such, this Motion to Dismiss is not brought on behalf of the Defendants in their personal capacities.

determining the power of the court to entertain the suit." *Denney v. Deutsche Bank AG*,

443 F.3d 253, 263 (2d Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

For the reasons stated below, none of the thirty-four Plaintiffs have established

standing in this case.  As to the individual Plaintiffs, their failure to allege that they have

suffered a concrete, particularized injury undermines their ability to establish standing.

The organizational Plaintiffs likewise lack standing because none of the individual

Plaintiffs who are purportedly members of their organizations can establish standing.

Absent any demonstration that Plaintiffs have been injured, this Court is without

jurisdiction to decide the claims brought in their complaint.

1.    Legal standard for motions to dismiss pursuant to Rule 12(b)(1)

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate

it." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (citation omitted), *vacated on

other grounds and superseded on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009).  In

resolving a motion to dismiss for lack of subject matter jurisdiction, a court ordinarily

"must take all facts alleged in the complaint as true and draw all reasonable inferences in

favor of plaintiff," *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006),

but "jurisdiction must be shown affirmatively, and that showing is not made by drawing

from the pleadings inferences favorable to the party asserting it," *Shipping Fin. Servs.

Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).  Rather, "[t]he plaintiff bears the

burden of proving subject matter jurisdiction by a preponderance of the evidence."  *See

Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015) (citations omitted).  Should the

Court find that jurisdiction is lacking, dismissal of the case is "mandatory."  *United Food*

*& Commercial Workers Union v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298,

301 (2d Cir. 1994) (internal citations omitted); *see also* Fed. R. Civ. P. 12(b)(1) and

12(h)(3).[5]

    2.    <u>The individual Plaintiffs have not alleged a concrete, particularized injury
necessary to establish standing</u>

All twenty-nine individual Plaintiffs lack standing to pursue the claims raised in

their complaint.  Article III standing requires a plaintiff to "allege[] such a personal stake

in the outcome of the controversy as to warrant his invocation of federal-court

jurisdiction and to justify exercise of the court's remedial powers on his behalf."  *Warth*,

422 U.S. at 498-99.  To establish standing, a plaintiff must show (1) an injury in fact,

(2) a sufficient causal connection between the injury and the conduct complained of, and

(3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Def. of*

*Wildlife*, 504 U.S. 555, 560-61 (1992).  The standing inquiry is "especially rigorous when

reaching the merits of the dispute would force [the court] to decide whether an action

taken by one of the other two branches of the Federal Government was unconstitutional."

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).  As the party asserting

jurisdiction in this Court, Plaintiffs bear the burden of "clearly alleg[ing] facts

demonstrating standing."  *Ross v. Bank of Am.N.A. (USA)*, 524 F.3d 217, 222 (2d Cir.

2008).

---

[5] Because Defendants' arguments as to standing concern the Court's jurisdiction, the
Court should consider that issue first.  *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*,
896 F.2d 674, 678 (2d Cir. 1990) ("[T]he court should consider the Rule 12(b)(1)
challenge first since if it must dismiss the complaint for lack of subject matter
jurisdiction, the accompanying defenses and objections become moot and do not need to
be determined." (citation omitted)).

Plaintiffs do not have standing in this case because they have not alleged an injury in fact.[6]  One of the key tenets of Article III standing is that a plaintiff must have suffered an injury that is "concrete, particularized, and actual or imminent."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  With respect to the possibility of future harm, the "threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient."  *Clapper*, 133 S. Ct. at 1147 (citation and internal brackets omitted).

Plaintiffs' complaint is entirely devoid of allegations identifying any sort of specific, particularized harm.  Plaintiffs contend that FBI conducts a cross-check for every NICS background check against the "Terrorist Screening Database," FAC ¶ 19, asserting that Defendants' conduct is "calculated to deprive" them of their Second Amendment rights and other civil liberties, FAC ¶ 112.  They also allege that Defendants collect and improperly disseminate personal information about prospective gun buyers to various government entities.  *See* FAC ¶¶ 25-29.  Yet Plaintiffs fail to point to *any* facts to support these bald allegations, to point to *any* specific occasion on which they were harmed by the Defendants supposedly unlawful conduct, or even to identify what type of injury they supposedly incurred as a result.  Plaintiffs also do not allege that they have ever been prevented from purchasing a firearm or that they have even had a firearm purchase delayed.  Nor do Plaintiffs state that they have ever had their own personal information gathered as part of any purportedly improper "field operation" conducted by the Defendants or that their own personal information was ever improperly disclosed to

---

[6] Defendants do not concede that, in the event Plaintiffs do identify a purported concrete injury, the other two elements of the standing inquiry would be satisfied.  Rather, because Plaintiffs have not established that they suffered any injury at all, Defendants simply are unable at this time to address the issues of causality and redressability.

other law enforcement agencies or to a private entity.  *See* FAC ¶¶ 24-28.  Although

Plaintiffs contend that they have been "stigmatized" as terrorists, *see* FAC ¶ 125, they

have not made any assertion of harm flowing from such alleged stigmatization.

Furthermore, despite claiming that Defendants have taken actions "calculated . . . to chill

them from exercising . . . valuable civil liberties," *see* FAC ¶ 112, Plaintiffs do not

identify even a single instance on which they were precluded from exercising their civil

liberties, let alone identify which of their civil liberties in particular they have been

precluded from exercising.  Plaintiffs have thus fallen well short of meeting their burden

to demonstrate a "concrete, particularized, and actual" injury.  *See Monsanto*, 561 U.S. at

149.

　　　　Indeed, as Plaintiffs admit in their complaint, the purpose of their lawsuit is not to

seek redress for a particular injury, but instead is to "shut down the [allegedly]

unconstitutional and illegal practices" of Defendants, "gain access to all information

retained about them, and create a meaningful process for all others to apply to obtain their

own information."  FAC ¶ 85.  But it is well-established that a "generalized interest of all

citizens in constitutional governance . . . is an inadequate basis on which to grant [a

plaintiff] standing."  *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990).  Instead, a plaintiff

must allege a violation of a *personal* constitutional right and must do more than raise

"abstract questions of wide public significance which amount to generalized grievances,

pervasively shared and most appropriately addressed in the representative branches."

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,

454 U.S. 464, 475 (1982).  It is precisely this type of personal, concrete injury that

Plaintiffs have failed to identify, and their failure to do so precludes them from having standing in this case.

 3. The organizational Plaintiffs lack standing because they have not shown that any of their members possess standing

 The five organizational Plaintiffs must likewise be dismissed for lack of standing. Because these Plaintiffs have not asserted that they themselves have been harmed by Defendants in any way, the only relevant inquiry is whether they have associational standing. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004) (addressing only associational standing where organizations did not plead "any injury to themselves"). To have associational standing, three factors must be met: (1) the organization's members must have standing to sue in their own right; (2) the interest the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 33, 343 (1977). The organizational Plaintiffs identify certain individual Plaintiffs as members of their organizations, but, as discussed above in Part A(2), none of the individual Plaintiffs have established that they have standing to sue. Any claim to standing by the organizational Plaintiffs thus fails at the first step of the inquiry, and the organizational Plaintiffs' claims must likewise be dismissed pursuant to Rule 12(b)(1).[7]

**B. In the alternative, Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim**

---

[7] To be sure, Defendants do not concede that the other two factors in the associational standing inquiry are met here. For example, an organization does not have standing to pursue a damages claim on behalf of its members, *see Bano*, 361 F.3d at 714, so the organizational Plaintiffs' claim to standing fails at other steps in the inquiry. However, because all three factors of the test must be met, the failure of any of the individual Plaintiffs to establish standing dooms the standing of the organizational Plaintiffs as well.

Even if the Court determines that Plaintiffs have standing, it should still dismiss Plaintiffs' complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  As explained below, none of the six causes of action brought by Plaintiffs articulate a cognizable claim.  Plaintiffs' failure to assert a cause of action sufficient to advance beyond the pleading stage thus provides an additional basis for dismissing the complaint.

> 1.      Legal standard for motions to dismiss pursuant to Rule 12(b)(6)

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Rather, facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  *Iqbal*, 556 U.S. at 663.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  *Id*. at 679; Fed. R. Civ. P. 8(a)(2).  Under this standard, conclusory allegations are not entitled to any assumption of truth and, therefore, will not support a finding that the plaintiff has stated a valid claim.  *See Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56–57 (2d Cir. 2008).

For the reasons discussed below, none of Plaintiffs' claims meet this pleading requirement.

2.  Plaintiffs have not asserted a cause of action under the Second Amendment because they have not identified any burden placed on their ability to possess a firearm

Plaintiffs first claim that Defendants' conduct violates the Second Amendment, which provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  As the Supreme Court has held, the Second Amendment guarantees an "individual right to possess and carry weapons in case of confrontation."  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2009).  The Court has further explained that the "core" protection of the Second Amendment is the "right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *Id*. at 634-35.  Thus, when determining what level of scrutiny to apply to a Second Amendment claim, a level less than strict scrutiny is appropriate where the regulation or government action being challenged "does not burden the 'core' protection of self-defense in the home."  *Kalchalsky v. Cty. of Westchester*, 701 F.3d 81, 93 (2d Cir. 2012).

Plaintiffs do not allege that Defendants have in any way burdened their ability to engage in self-protection either inside or outside of their homes.  In fact, Plaintiffs fail to allege any facts showing that Defendants have imposed *any* burden on their Second Amendment rights whatsoever.  Instead, Plaintiffs offer only general and conclusory assertions about Defendants' allegedly illegal conduct, without any explanation about how Defendants' purported misconduct violates the Second Amendment.  *See* FAC ¶ 112 ("The acts and omissions of the Defendants are calculated to deprive the Plaintiffs of

14

their fundamental rights under the Second Amendment . . . ."); ¶ 113 (alleging that

Defendants' conduct "is calculated to destroy the essence of the Second Amendment of

the United States Constitution and the spirit of those who would support and exercise it,

in order that this last line of defense for the Bill of Rights would fall as surely as have

other of the Plaintiffs' civil liberties"); ¶ 114 ("The Defendants are targeting the Plaintiffs

for exercising their rights to keep and bear arms, a fundamental right, guarantee by the

Second Amendment to the United States Constitution.").  Although the legal standards

governing Second Amendment claims are still evolving post-*Heller*, *see Kalchalsky*, 701

F.3d at 88 ("*Heller* was never meant to clarify the entire field of Second Amendment

jurisprudence" (citation omitted)), at a minimum, a plaintiff must identify some burden to

his or her ability to own or possess a firearm in order to sustain a cause of action, *see id*.

at 93 (noting that standards for Second Amendment claims apply to "laws *burdening* the

right to bear arms" (emphasis added); *Heller*, 554 U.S. at 592 (observing that the Second

Amendment guarantees that "the individual right to possess and carry weapons in case of

confrontation" from being "*infringed*").  Plaintiffs have failed to plead any such burden,

and, consequently, their allegations concerning the Second Amendment do not state a

cognizable claim.

     3.     <u>Plaintiffs have failed to identify a protected property or liberty interest
necessary to sustain their due process claim</u>

Plaintiffs next allege that Defendants have targeted Plaintiffs as potential firearm

owners in violation of their due process rights under the Fifth Amendment.  *See* FAC

¶ 118.  In particular, Plaintiffs contend that they should be afforded "pre and post

deprivation rights" by Defendants for using their personal information to run an alleged

"cross-check" against the Terrorist Screening Database; "for tagging a potential

purchaser of a firearm as a 'match[;]' for delaying an attempted firearms purchase;" and for "withholding notification of being nominated to, placed in, or removed from the 'Terrorist Screening Database.'" *Id*.  As with their Second Amendment claim, Plaintiffs' due process claim suffers from fatal pleading defects.

A procedural due process violation[8] occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard.  *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).   To survive a motion to dismiss a procedural due process claim, a plaintiff must allege that he or she possessed a protected liberty or property interest and was deprived of that interest without due process of law.  *McMenemy v. City of Rochester*, 241 F.3d 279, 285–86 (2d Cir.2001).  As to the first element of a procedural due process claim, courts have held that interests protected by the due process clause "are not generally constitutionally established; rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those

---

[8] Due process encompasses both substantive and procedural components.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Plaintiffs' complaint appears to raise only a procedural due process violation, *see* FAC ¶ 118 (seeking "pre and post deprivation rights"), so Defendants' motion primarily addresses that type of due process claim.  Nonetheless, to the extent Plaintiffs' due process claim can be construed to allege a violation of the former, they similarly have failed to state a claim.  To bring a substantive due process claim, Plaintiffs must assert that Defendants acted in such a manner so as to "shock the conscience."  *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998) (holding that, for a substantive due process violation, government conduct must have been "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience").  Behavior that meets this high standard includes "malicious and sadistic abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose."  *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (citation omitted).  Plaintiffs make no such allegations of conscience-shocking behavior in their complaint and thus have no cognizable substantive due process claim.

benefits.'"  *Rolon v. Henneman*, 517 F.3d 140, 148 (2d Cir. 2008) (quoting *Bd. of*

*Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Plaintiffs have failed to plead sufficiently a procedural due process claim because

they have not identified a protected property or liberty interest.  Indeed, Plaintiffs have

not pointed to *any* property interest that could form the basis of their due process claim.

Plaintiffs' most specific allegation concerning due process is their assertion that pre- and

post-deprivation rights should accompany an alleged "cross-check" of their personal

information against the Terrorist Screening Database, suggesting that this interest arises

from the Fifth Amendment itself.  *See* FAC ¶ 118.  But "[i]t is well-established that the

Due Process Clause does not itself create the property interests that it protects,"

*McMenemy*, 241 F.3d at 286, so Plaintiffs must identify a source of law independent from

the Fifth Amendment that gives rise to their protected property interest.  Plaintiffs have

done no such thing, and their due process claim must be dismissed as a result.[9]  *See*

*Rolon*, 517 F.3d at 148 (dismissing procedural due process claim where plaintiff failed to

point to any "rules or understandings" establishing a property interest).[10]

_____

[9] To the extent Plaintiffs contend that they have a protected property interest arising out
of their reputation which has been damaged by their alleged stigmatization as terrorists,
such a theory is still insufficient to establish a viable due process claim.  *See Paul v.
Davis*, 424 U.S. 693, 704-05 (1976) (holding that harm to one's reputation does not
deprive that person of a liberty or property interested protected by the Due Process
Clause).

[10] In the absence of any identification of a protected property interest, Defendants cannot
know what procedures are necessary to protect against a wrongful deprivation of that
interest.  Nevertheless, Plaintiffs' procedural due process claim still fails as a matter of
law with respect to sufficient procedural protections.  "[D]ue process is flexible and calls
for such procedural protections as the particular situation demands."  *Morrissey v.
Brewer*, 408 U.S. 471, 481 (1972).  Above all else, Plaintiffs must allege that government
officials knowingly, and not merely negligently, deprived them of a property interest
"without notice and an opportunity to be heard 'at a meaningful time and in a meaningful

4. <u>Plaintiffs' Fourth Amendment claim should be dismissed for failure to identify a search or seizure by the Defendants</u>

Plaintiffs' third cause of action, that Defendants violated their Fourth Amendment rights, fails for similar reasons.  The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  "It is axiomatic that a plaintiff alleging an unreasonable search [or seizure] must [allege] some evidence that a search has actually taken place."  *Davis v. Rodriguez*, 364 F.3d 424, 435 (2d. Cir. 2004); *see also Thorne v. Jones*, 765 F.2d 1270, 1275 (5th Cir. 1985) (concluding that plaintiffs who did not claim that they were searched by the defendants had no colorable claim under the Fourth Amendment).  Plaintiffs have not alleged that they were subject to either a search or a seizure in their complaint; instead, they merely assert, without further explanation, that Defendants' conduct has deprived them "of their right to be free from unreasonable searches and seizure in violation of the Fourth Amendment," FAC ¶ 121, and that Defendants are "targeting the Plaintiffs . . . in a manner that violates the rights of the Plaintiffs to be free from unwarranted searches and seizures," FAC ¶ 122.  Plaintiffs' reliance on such conclusory assertions, combined with their failure to identify any search or seizure on which to base their claim, warrants dismissal.  *See Iqbal*, 556 U.S. at 663 (holding that a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

---

manner.'"  *Mathews* 424 U.S. at 333.  As discussed above, individuals have the opportunity to obtain information regarding the reasons for the denial of a firearms purchase and to contest any information relied upon in the NICS background check, *see* 28 C.F.R. § 28.10(a)-(c), and to file an action in court, *see* 18 U.S.C. § 925A.

Construed in the most generous light possible, Plaintiffs' Fourth Amendment claim appears to rest on the belief that Defendants' alleged use of information gathered in the NICS background check process to cross-check against the Terrorist Screening Database and the alleged disclosure of that information to other government entities constitutes a Fourth Amendment violation.  To the extent this vague assertion can be construed as alleging a search or seizure, which it cannot, Plaintiffs' claim must still fail because they have not identified any unreasonable search.  The touchstone of Fourth Amendment jurisprudence counsels that an unreasonable search occurs only "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 133 (1984).  Yet the Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."  *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979).  Here, as Plaintiffs allege in their complaint, the information purportedly used improperly by Defendants, is provided by a customer to a federally licensed dealer when the customer applies to purchase a firearm.  FAC ¶ 6.  Plaintiffs have no reasonable expectation of privacy in this information that they provide to a licensed dealer during a firearms transaction.  *See Smith*, 442 U.S. at 744 (holding that a person has no reasonable expectation of privacy in the numerical information provided to telephone companies when dialing); *United States v. Miller*, 425 U.S. 435, 443 (1976) (holding that a bank customer has no reasonable expectation of privacy in information submitted on checks and deposit slips, for "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a

limited purpose and the confidence placed in the third party will not be betrayed").

Plaintiffs' Fourth Amendment claim should accordingly be dismissed.[11]

> 5. <u>Plaintiffs' equal protection claim fails because they have not plead facts demonstrating that Defendants acted in a discriminatory manner and because they have not shown they were treated differently than similarly situated individuals</u>

Plaintiffs next assert that Defendants' operation of the NICS background check has discriminated against them "as potential customers of firearms," which, in turn, has stigmatized Plaintiffs as "terrorists and potential terrorists."  FAC ¶ 125.  Plaintiffs bring this claim pursuant to the Fourteenth Amendment, *see id.*, which precludes states from, among other things, denying persons "the equal protection of the laws," U.S. Const. amend. XIV, § 1.  As a preliminary matter, the Fourteenth Amendment applies only to the acts of "states" and does not extend to the federal government, though it "has been judicially interpreted to apply to the federal government as part of the Fifth Amendment." *Weinstein v. Albright*, 261 F.3d 127, 139 n.14 (2d Cir. 2001).

To sustain an equal protection claim under the Fifth Amendment, Plaintiffs must plead that Defendants "acted with discriminatory purpose."  *Iqbal*, 556 U.S. at 676. "[P]urposeful discrimination requires more than intent as volition or intent as awareness of consequences."  *Id.*  "It instead involves a decisionmaker's undertaking a course of

---

[11] To the extent Plaintiffs' Fourth Amendment claim rests on a contention that Defendants have somehow seized their information, their claim still fails.  Although Fourth Amendment protections encompass the seizure of intangibles as well as tangible items, there nevertheless still must be a violation of a reasonable expectation of privacy. *See Caldarola v. Cty. of Westchester*, 343 F.3d 570, 574-75 (2d Cir. 2003).  As explained above, Plaintiffs cannot demonstrate a reasonable expectation of privacy in information submitted on a Form 4473.  Furthermore, any use of this information is supported by a legitimate law enforcement purpose of ensuring that firearms are not transferred to persons who are disqualified under federal or state law from possessing them.  *See id.* at 576-77.

action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group." *Id*. at 676-77.  Plaintiffs can demonstrate intentional discrimination in one of three ways:  (1) by "pointing to a law or policy that expressly classifies persons on the basis of a suspect classification'; (2) by "identifying a facially neutral law or policy that has been applied in an intentionally discriminatory manner;" or (3) "alleging that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Turkmen v. Hasty*, 789 F.3d 218, 252 (2d Cir. 2015) (brackets and citation omitted).

Plaintiffs' claim falls well short of meeting this standard.  Plaintiffs do not contend that they are members of a suspect class, nor do they allege any facts demonstrating that Defendants acted in an intentionally discriminatory manner or were motivated by discriminatory animus.  Rather, Plaintiffs make the unsupported assertion that Defendants have targeted potential firearms purchasers as part of "an agenda of equating potential purchasers of firearms with 'terrorists' to elicit all of the discriminatory emotions associated with the term."  FAC ¶ 126.  But as the Supreme Court has made clear, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678-79 (affirming dismissal of complaint that alleged that the defendant "knew of, condoned, and willfully and maliciously agreed to subject [plaintiff] to harsh conditions of confinement" based on a discriminatory motive).  Plaintiffs must do more than simply state, without any supporting factual basis, that Defendants were motivated by a discriminatory purpose.

Plaintiffs, moreover, do not contend that they were treated differently than similarly situated individuals.  Because Plaintiffs do not allege membership in a protected class, they must show that there were in a "class of one" such that they were treated differently from other similarly situated individuals, without any rational basis for the differences in treatment.  *See Fresh Start Substance Serv., LLC v. Galvin*, 599 F. Supp. 2d 279, 284 (D. Conn. 2009).  But Plaintiffs have not alleged that they are treated differently than any other potential purchasers of firearms; in fact, their complaint notes that all potential purchasers of firearms from licensed dealers are subject to the same background check requirements.  *See* FAC ¶ 2.  In the absence of factual allegations demonstrating that Defendants acted with a discriminatory purpose and that Plaintiffs were treated differently from similarly situated individuals, Plaintiffs' equal protection claim should be dismissed.

6.      <u>Plaintiffs have failed to plead any violation of their right to privacy because they do not have a protected privacy interest in information submitted as part of the NICS background check process</u>

Plaintiffs' fifth claim—that Defendants' have violated their right to privacy— similarly fails to pass muster under Rule 12(b)(6).  Plaintiffs' claim centers on their belief that Defendants improperly disseminate the information prospective gun owners submit as part of the NICS background check process to other offices and agencies.  FAC ¶ 129.

Plaintiffs' privacy claim fails as a matter of law for multiple reasons.  To begin with, the Second Circuit has recognized a right to privacy in one's personal information only "in a limited set of factual circumstances," such as medical information or other "private and intimate information."  *See Johnson ex rel. Johnson v. Columbia Univ.*, No. 99 CIV. 3415 (GBD), 2003 WL 22743675, at *10 (S.D.N.Y. Nov. 19, 2003) (concluding

that a plaintiff had no privacy rights in the fact that his brother was a juvenile offender); *see also Paul*, 424 U.S. at 713 (observing that the constitutional right to privacy lies in activities "implicit in the concept of ordered liberty," such as "matters related to marriage, procreation, contraception, family relationships, and child rearing and education").  Here, the information provided by an applicant to purchase a firearm consists of the applicant's name, date of birth, gender, race, state of residence, and (if voluntarily provided by the applicant) Social Security number.  FAC ¶ 13.  None of this information—nearly all of which is easily ascertainable from the public record—rises to the level of personal information in which courts have found there to be a protected privacy interest.  *Compare Doe v. City of New York*, 15 F.3d 264, 269 (2d Cir. 1994) (concluding that plaintiff had right to privacy concerning his HIV-positive status because one's "personal medical condition is a matter that he is normally entitled to keep private") *with Cassano v. Carb*, 436 F.3d 74, 75 (2d Cir. 2006) (adopting holding of other circuit courts that there is no right to privacy in one's Social Security number).  Plaintiffs' claim to a right to privacy in the information submitted on an application to purchase a firearm from a licensed dealer accordingly fails for this reason.

Plaintiffs' claim fails for the additional reason that they have no reasonable expectation of privacy in the information provided as part of the application.  *See Soucie v. Cty. of Monroe*, 736 F. Supp. 33, 36 (W.D.N.Y. 1990) ("Whether the Constitution in fact protects against the type of disclosure alleged to have occurred here depends upon whether the plaintiff had a reasonable expectation of privacy in the information.").  As discussed in Section B(4), Plaintiffs lack any expectation of privacy in information they voluntarily provide to a third party as part of their application to purchase a firearm.  The

absence of any expectation of privacy in this information therefore constitutes a second

fatal flaw in Plaintiffs' right-to-privacy claim.

      7.     <u>Plaintiffs have not stated a claim under the APA because they have not</u>
<u>challenged a final, discrete agency action</u>

Plaintiffs' sixth and final claim is brought pursuant to the Administrative

Procedure Act, 5 U.S.C. §§ 701-706.  Plaintiffs claim that Defendants' alleged cross-

checking during NICS background checks constitutes "an unlawful withholding or an

unreasonable delay of completion" of the check under § 706(1).  They further assert that

other, unidentified actions of the Defendants "continue to be arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law" pursuant to § 706(2)(A)-

(D).[12]

The APA permits judicial review only of a "final agency action."  5 U.S.C. § 704;

*Lujan*, 497 U.S. at 882 ("When . . . review is sought not pursuant to specific authorization

in the substantive statute, but only under the general review provisions of the APA, the

'agency action' in question must be 'final agency action.'").  As the Supreme Court has

made clear, an "agency action" for purposes of the APA is limited to the set of

"circumscribed, discrete agency actions" delineated in 5 U.S.C. § 551(13).  *Norton v. S.*

*Utah Wilderness All.*, 542 U.S. 55, 62 (2004) ("'Agency action' is defined in § 551(13) to

include 'the whole or a part of an agency rule, order, license, sanction, relief, or the

equivalent or denial thereof, or failure to act.'").  The Court further emphasized that a

plaintiff raising a failure-to-act claim must still point to a discrete action that the agency

failed to take.  *Id*. at 63 ("The important point is that a "failure to act" is properly

understood to be limited, as are the other items in § 551(13), to a discrete action.").

---

[12] Plaintiffs mistakenly cite to § 705(1) and § 705(2)(A)-(D).  *See* FAC ¶ 133.

In this case, Plaintiffs do not challenge a specific, discrete action by Defendants but instead assert a broad challenge to Defendants' supposed cross-checking of prospective firearms purchasers as part of the NICS background check process.  *See generally*, FAC ¶¶ 134-38.  The APA, however, cannot be used as a vehicle for making this sort of a "broad programmatic attack" on an agency program.  *See S. Utah Wilderness All.*, 542 U.S. at 63 ("The limitation to a discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. National Wildlife Federation* . . . .").  Indeed, the true nature of Plaintiffs' APA claim is further made clear by their request for relief; rather than seek to have the Defendants take action on a particular firearm purchase application they contend is being unlawfully withheld, they instead seek to invalidate the entire program whereby Defendants supposedly conduct cross-checks against the Terrorist Screening Database.[13]  *See* FAC, Prayer for Relief ¶¶ II-III, VI.  Because the APA is not a mechanism by which Plaintiffs can seek this form of relief, this claim must also be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.


Dated: March 22, 2016                                  Respectfully submitted,

                                                       BENJAMIN C. MIZER

---

[13] To the extent Plaintiffs seek disclosure of information as part of their APA claim, *see* FAC, Prayer for Relief ¶ IV, their claim must be dismissed for the additional reason that they have an alternate available remedy to them, *see* 5 U.S.C. § 704 (authorizing claims against agency actions "for which there is no other adequate remedy in a court").  Here, Plaintiffs can request the information from the Defendants via the Freedom of Information Act, 5 U.S.C. § 552.

Principal Deputy Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

s/Nathan Swinton
NATHAN SWINTON (NY Bar)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Telephone: (202) 305-7667
Fax: (202) 616-8470
Nathan.M.Swinton@usdoj.gov

Attorneys for Defendant